**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GAIL R. GOSNELL, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:19-cv-03490 |
| CAVALRY SPV I, LLC, and CAVALRY PORTFOLIO SERVICES, LLC, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## COMPLAINT

NOW comes GAIL R. GOSNELL ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of CAVALRY SPV I, LLC ("Cavalry") and CAVALRY PORTFOLIO SERVICES, LLC ("CPS") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.*, for Defendants' unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as a substantial amount of the events that gave rise to this action occurred within the Northern District of Illinois.

### PARTIES

1

4.  Plaintiff is a natural person and a consumer over-the-age of 18.

5.  Cavalry and CPS promote that they are "leader[s] in the acquisition and management of non-performing consumer loan portfolios."[1] Cavalry is a debt purchaser and third-party debt collector that purchases delinquent consumer accounts from various financial institutions and other entities. CPS is the entity responsible for servicing the delinquent consumer accounts purchased by Cavalry.

6.  CPS is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 4050 East Cotton Center, Building 2, Phoenix, Arizona.

7.  Cavalry is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 500 Summit Lake Drive, Number 400, Valhalla, New York.

8.  Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

9.  Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

### FACTS SUPPORTING CAUSES OF ACTION

10. Several months ago, Plaintiff obtained a line of credit through Citibank, N.A./AAdvantage ("Citibank") to finance the purchase of personal and other consumer goods and/or services.

11. Due to financial hardship, Plaintiff fell behind on her scheduled payments to Citibank, thus incurring debt ("subject debt").

---

[1] https://www.cavalryportfolioservices.com/About

2

12. Thereafter, Cavalry purchased the subject debt from Citibank and referred Plaintiff's account to CPS for collection.

13. On or around November 30, 2018, CPS, on behalf of Cavalry, mailed or caused to be mailed a "dunning letter" in an attempt to collect upon the subject debt. CPS's November 30, 2018 letter reflects a purported "Balance Due" of $5,732.00 for the subject debt. *See CPS' November 30, 2018 collection letter to Plaintiff, attached hereto as* **Exhibit "A"**.

14. This "dunning" letter provided the language required under § 1692g of the FDCPA, including the portion: "Unless you notify [CPS] within 30 days after receiving this letter that you dispute the validity of the debt or any portion thereof, [CPS] will assume this debt is valid."

15. Upon information and belief, Plaintiff did not dispute the validity of the subject debt within 30 days of receiving the November 30, 2018 letter.

16. On January 26, 2019, however, CPS, on behalf of Cavalry, mailed or caused to be mailed another collection letter to Plaintiff in an attempt to collect upon the subject debt. *See CPS' January 26, 2019 collection letter to Plaintiff, attached hereto as* **Exhibit "B"**.

17. CPS's January 26, 2019 letter once again reflects a "Balance Due" of $5,732.00 for the subject debt. Moreover, this letter contains threats of potential litigation against Plaintiff by warning Plaintiff that his account purportedly meets CPS's and Cavalry's criteria to place it with a collection law firm.

18. Furthermore, CPS's January 26, 2019 letter states the following: "As of the date of this letter, no attorney has reviewed the particular circumstances of [Plaintiff's] account…"

19. Through its phrasing and structure, CPS's letter misleadingly suggests that a potential collection lawsuit against Plaintiff would be one-sided in favor of Cavalry and CPS. The harassing and misleading nature of the January 26, 2019 letter is evident by its multiple references to a

"judgement," which unacceptably oversimplifies the judicial system to an unsophisticated consumer.

20. Cavalry directed CPS to issue the harassing and misleading litigation threats of the January 26, 2019 letter. Subsequently, Cavalry referred the subject debt to Mandarich Law Group, LLP ("Mandarich"), a law firm, for collection.

21. On March 29, 2019, Mandarich, at the direction of Cavalry, mailed or caused to be mailed another dunning letter to Plaintiff in an attempt to collect upon the subject debt. Mandarich's letter similarly reflects a "Balance Due" of $5,732.00 for the subject debt. *See Mandarich's March 29, 2019 collection letter to Plaintiff, attached hereto as **Exhibit "C"**.*

22. This March 29, 2019 letter also contains similar dunning language: "Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by [Mandarich]."

23. As a result of this subsequent "dunning" letter and the conflicting information evident in the relevant letters, Plaintiff was confused as to the true status of the subject debt and her ability to dispute the same, especially due to the fact that Cavalry was involved throughout this entire process.

24. Frustrated over Defendants' conduct, Plaintiff spoke with Sulaiman regarding her rights.

25. Plaintiff has incurred costs and expenses consulting with and retaining her attorneys as a result of Defendants' conduct.

26. Plaintiff has suffered concrete harm due to Defendants' conduct, including but not limited to, aggravation, invasion of privacy, and emotional distress.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST CAVALRY AND CPS)

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

4

28. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

29. Cavalry and CPS are "debt collector[s]" as defined by §1692a(6) of the FDCPA, because they regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

30. Cavalry and CPS are engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others, and debt collection is a primary purpose of their business.

31. Furthermore, CPS identifies itself as a debt collector and has been a member of the ACA, an association of debt collectors, since 2001.[2]

32. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

### a. Violations of the FDCPA § 1692e

33. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

34. In addition, this section enumerates specific violations, such as:

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

35. Cavalry and CPS violated 15 U.S.C. §§ 1692e, and e(10) when they misleadingly portrayed a potential collection lawsuit to be completely in their favor. Plaintiff was unfairly harassed and confused by their representations, as there were no legal proceedings initiated against Plaintiff with regard to the subject debt at the time the correspondence was sent. Defendants' correspondence

---

[2] http://www.acainternational.org/search#memberdirectory

purposefully obfuscated the rights and options Plaintiff would have in order to avoid a judgment, which was highly confusing to Plaintiff. Moreover, Defendants' portrayal of a possible lawsuit against Plaintiff as one-sided in their favor is misleading to a consumer, because it fails to account for Plaintiff's options to dispute Defendants' allegations.

### b. Violations of FDCPA § 1692f

36. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

37. Cavalry and CPS violated 15 U.S.C. §1692f when they unfairly attempted to collect upon the subject debt. Specifically, it was unfair for Cavalry and CPS to grossly oversimplify the legal process by portraying a possible lawsuit against Plaintiff to be in the their favor.

WHEREFORE, Plaintiff, GAIL R. GOSNELL, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e. Enjoining Cavalry and CPS from further contacting Plaintiff; and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST CAVALRY)

38. Plaintiff repeats and realleges paragraphs 1 through 37 as though fully set forth herein.

### a. Violations of FDCPA § 1692e

39. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

40. In addition, this section enumerates specific violations, such as:

> "The false representation of . . . the character, amount, or legal status of any debt . . . ." 15 U.S.C. §1692e(2)(A).

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

41. Cavalry violated §1692e, e(2)(A), and e(10) through the conflicting information contained in the multiple dunning letters it mailed or caused to be mailed to Plaintiff. Upon sending the first dunning letter to Plaintiff on November 30, 2018, Cavalry and CPS provided the requisite information regarding the timeframe within which Plaintiff must dispute the subject debt, lest the subject debt be assumed valid. Because Plaintiff did not dispute the validity of the subject debt within the 30 day window, the representations in the November 30, 2018 letter suggested that the debt would, in fact, be assumed to be valid. The similar representations made in the second dunning letter mailed on March 29, 2019 directly cut against that assertion. The three letters mailed by Defendants establish the operational machinations organized by Cavalry, CPS, and Mandarich. After purchasing a consumer debt, Calvary, a third-party debt collector, uses CPS to service upon the defaulted accounts that Cavalry owns. If CPS is unable to collect from a consumer, Cavalry and CPS enlist a debt collection law firm, such as Mandarich, to potentially seek legal action against consumers, which is evidenced by January 26, 2019 and March 29, 2019 letters. Therefore, it is evident by their letters that Cavalry, CPS and Mandarich have organized a debt collection system that necessitates the exchange of information between all three entities.

42. Consequently, by again suggesting that if Plaintiff failed to dispute the validity of the subject debt within 30 days of receiving the letter, Cavalry and CPS would assume the debt to be valid, Cavalry clearly did not assume the subject debt was valid as represented in the March 29, 2019 dunning letter mailed by Mandarich at the behest of Defendants. As such, Defendants misrepresented whether and to what extent the subject debt is assumed to be valid.

43. Cavalry's false, misleading, and conflicting statements had the material effect of confusing Plaintiff as to her rights. Moreover, by sending multiple dunning letters, Cavalary purposefully intended to create a false sense of urgency in Plaintiff with the hopes of securing payment.

**b. Violations of FDCPA § 1692f**

44. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

45. Cavalry violated §1692f by employing unfair means to collect the subject debt from Plaintiff. Specifically, it was unfair for Cavalry to send collection letters structured in a way to confuse Plaintiff as to her rights under the FDCPA.

**c. Violations of FDCPA § 1692g**

46. The FDCPA, pursuant to 15 U.S.C. §1692g(b), provides that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during

the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

47. Cavalry violated §1692g(b) by sending multiple dunning letters, thus misrepresenting Plaintiff's rights under the FDCPA. Once the consumer receives the validation notice---irrespective of when the "initial communication" actually occurred---the thirty-day clock begins ticking. 15 U.S.C. § 1692g(b); *see also*, *Vayngurt v. Sw. Credit Sys., L.P.*, 2016 U.S. Dist. LEXIS 142680, at *13 (E.D.N.Y. Oct. 14, 2016) ("if the plaintiff waits more than thirty days to attend to the matter, she loses many of her rights under the FDCPA.") (quoting *Harry v. Pentagroup Fin., LLC*, 2007 U.S. Dist. LEXIS 17821, at *11 (E.D.N.Y. Mar. 14, 2007)). If the consumer disputes the debt in writing within the thirty-day period, she triggers the statutory protections under § 1692g(b), and the debt collector must cease collection. 15 U.S.C. § 1692g(b). Consequently, Cavalry's second dunning letter creates confusion for Plaintiff regarding her rights under the FDCPA.

WHEREFORE, Plaintiff, GAIL R. GOSNELL, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e. Enjoining Cavalry from further contacting Plaintiff; and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: May 24, 2019                              Respectfully submitted,

s/ Nathan C. Volheim                            s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. #6302103                Taxiarchis Hatzidimitriadis, Esq. #6319225
*Counsel for Plaintiff*                         *Counsel for Plaintiff*
Admitted in the Northern District of Illinois   Admitted in the Northern District of Illinois
Sulaiman Law Group, Ltd.                        Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200             2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                         Lombard, Illinois 60148
(630) 568-3056 (phone)                          (630) 581-5858 (phone)
(630) 575-8188 (fax)                            (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                        thatz@sulaimanlaw.com

10