# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GAIL R. GOSNELL, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Case No: 1:19-cv-03490 |
| v. | )<br>) Judge Sharon Johnson Coleman |
| CAVALRY SPV I, LLC and<br>CAVALRY PORTFOLIO SERVICES, LLC, | )<br>)<br>) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Cavalry SPV I, LLC ("SPV") and Cavalry Portfolio Services, LLC ("CPS") (collectively, "Cavalry" or "Defendants"), by counsel, move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Based on a fanciful view of the facts and the law, Plaintiff alleges that Cavalry violated the Fair Debt Collection Practice Act ("FDCPA") when it (1) supposedly suggested in a letter that a lawsuit had been filed when no such suit had been filed, and didn't advise Plaintiff of her right to defend this hypothetical lawsuit (Count I); and (2) sent her two statutorily mandated notices advising of her right to dispute the debt, one of which came from Cavalry, and the other from the law firm Cavalry later retained to pursue further collection efforts (Count II). (Compl. ¶¶ 35, 37, 41-47.) All three letters are attached as exhibits to the Complaint and unequivocally contradict Plaintiff's allegations. As to Count I, CPS's letter dated January 26, 2019 ("January Letter") explicitly stated—four times—that no lawsuit had been filed and that Plaintiff "will have the opportunity to defend [herself] after the lawsuit is filed." (Compl. at Ex. B.) As to Count II, courts in the Seventh Circuit and

elsewhere have repeatedly held that the FDCPA *requires* each successive debt collector—including attorneys—to send a new or "fresh" validation notice. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## II.     PLAINTIFF'S ALLEGATIONS

Plaintiff admits that she failed to make payments on a "line of credit" ("Account") and that Cavalry is now entitled to file a lawsuit against her seeking a judgment for the amount owed. (Compl. ¶¶ 10-11.)[1] Despite admitting liability on the debt, Count I claims that the January Letter violated the FDCPA because it purportedly suggested that a lawsuit had been filed and this lawsuit was "one-sided in favor of Defendants." (*Id.* at ¶ 35.) But these claims misrepresent the actual contents of the January Letter. (*Id.* Ex. B.)

Plaintiff first claims that she was "unfairly harassed and confused" by the January Letter because it stated that "legal proceedings [were] initiated against Plaintiff with regard to the subject debt at the time of the correspondence was sent." (*Id.* at ¶¶ 20, 35.) Yet Plaintiff elsewhere admits that the letter only referenced "*potential* litigation" and a "*possible* lawsuit." (*Id.* at ¶¶ 17, 35, 37) (emphasis added). And, in reality, the letter states that, "as of the date of this letter, no attorney has reviewed the particular circumstances of your account to determine whether a lawsuit *should be filed against you*," "an attorney … will make the final decision as to whether a lawsuit *should be filed*," and "*if a lawsuit is filed*, the law firm will ask the court to enter a judgment against you." (*Id.* at Ex. B) (emphasis added).

---

[1] Indeed, on May 20, 2019, Cavalry filed a lawsuit against Plaintiff for the amount owed on the Account that is currently pending in Lake County, Illinois as case number 19-SC-2518.

Plaintiff also contends that the January Letter "obfuscated" her "rights and options" to avoid a judgment and portrayed "a possible lawsuit against Plaintiff as one-sided in favor of Defendants ... because it fails to account for Plaintiff's options to dispute Defendants' allegations." (*Id*. at ¶¶ 19, 35, 37.) In reality, the letter includes this *exact* language and states, "You will have the opportunity to defend yourself after the lawsuit is filed." (*Id*. at Ex. B.) On these allegations, Plaintiff asserts claims under FDCPA Sections 1692e and 1692f.

In Count II, Plaintiff admits that Cavalry sent her a notice in compliance with Section 1692g of the FDCPA that advised her of the right to dispute the validity of the (admittedly valid) debt within 30 days of receiving the notice. (*Id*. at ¶¶ 14, 41, Ex. A.) Plaintiff didn't dispute the debt but also didn't pay it and, after several months, Cavalry placed the account with a law firm. (*Id*. at ¶¶ 15, 20.) The law firm then sent its own validation notice pursuant to Section 1692g, thus providing Plaintiff with a fresh opportunity to dispute the debt. (*Id*. at ¶¶ 21-22, Ex. C.) Plaintiff claims this second notice was "confusing" and "unfair" in violation of FDCPA sections 1692e, 1692f, and 1692g. (*Id*. at ¶¶ 41-47.) In reality, the law firm sending the second notice this is *exactly* what the law required.

### III.     ARGUMENT

"It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a plaintiff must do

more than set forth "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. And "when an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

In the Seventh Circuit, claims that a collection letter violated the FDCPA are evaluated through the lens of an "unsophisticated consumer" who "isn't a dimwit." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). The unsophisticated consumer "may be uninformed, naïve, and trusting, but she has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences." *Id*. This is an objective standard and courts must "disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005). Put differently, the FDCPA "is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one." *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000).

**A.    Count I Fails to State an Actionable Claim Under Sections 1692e or 1692f Based on the January Letter.**

**1.    Plaintiff's Section 1692e claims fail as a matter of law.**

Section 1692e generally prohibits debt collectors from using "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. That section also provides a list of prohibited conduct, which includes "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Plaintiff's allegations that the January Letter violated Section 1692e are based on an irrational and bizarre misreading of the letter.

4

### i. The January Letter repeatedly stated that no lawsuit had been filed at the time it was sent.

Nothing in the January Letter suggests that a lawsuit was "initiated against Plaintiff with regard to the subject debt at the time the correspondence was sent." (Compl. ¶ 35.) Even Plaintiff admits that the letter merely referenced "*potential* litigation" and a "*possible* lawsuit." (*Id*. at ¶¶ 17, 35, 37) (emphasis added.) In fact, the January Letter states *four times* that no lawsuit had been filed but may be filed in the future:

- "As of the date of this letter, no attorney has reviewed the particular circumstances of your account to determine whether a lawsuit *should be filed* against you";

- "If your account is placed with a collection law firm, an attorney will review your account and make the final decision as to whether a lawsuit *should be filed*";

- "*If a lawsuit is filed*, the law firm will ask the court to enter a judgment against you for the full amount you owe";

- "You will have the opportunity to defend yourself *after the lawsuit is filed*."

(*Id*. at Ex. B) (emphasis added). The Seventh Circuit has held that a plaintiff fails to state a claim under the FDCPA "and dismissal is appropriate as a matter of law when it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012); *Durkin*, 406 F.3d at 415 ("a mere claim of confusion is not enough: a plaintiff must show that the challenged 'language of the letters unacceptably increases the level of confusion'"); *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574-75 (7th Cir. 2004) (if "the interpretation attested to by plaintiff is 'fantastic conjecture'—the court should reject it without requiring evidence beyond the letter itself"). Here, Plaintiff's claim that she was "confused" about

5

whether a lawsuit was pending—when the January Letter repeatedly says the exact opposite—is fantastic and should be dismissed with prejudice.

> ii. *The January Letter advised Plaintiff that she could defend herself in a potential lawsuit and characterized the entry of a judgment as conditional.*

Equally bizarre is Plaintiff's claim that the January Letter "obfuscated the rights and options [she] would have in order to avoid a judgment" and "misleadingly" portrays a lawsuit as "one-sided in favor of Defendants … because it fails to account for Plaintiff's options to dispute Defendants' allegations." (Compl. ¶¶ 19, 35.) Again, this grossly misrepresents the actual words on the page:

> If a lawsuit is filed, the law firm will ask the court to enter a judgment against you for the full amount that you owe. *You will have the opportunity to defend yourself after the lawsuit is filed*. If a judgment is entered, the law firm will be authorized to take further action to satisfy the balance owed on the judgment.

(*Id*. at Ex. B) (emphasis added). Hence, the January Letter clearly advised Plaintiff of her "rights and options" to "dispute Defendants' allegations" by "defend[ing] [herself] after the lawsuit is filed." (*Id*. at ¶ 35, Ex. B.)

Additionally, no rational interpretation of the January Letter suggests that a lawsuit will be "one-sided" or that a judgment against Plaintiff is a foregone conclusion.[2] The portion of the January Letter quoted above clearly characterizes the entry of a judgment as conditional on Cavalry's success in a potential lawsuit. For example, in *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1026 (9th Cir. 2012), the plaintiff alleged that a collection letter characterized a judgment as

---

[2] Given Plaintiff's admissions that she opened the Account "several months ago," failed to make the required payments, and Cavalry is entitled to the full amount due, it is not clear what—if any—defenses she would have against entry of a judgment. (Compl. ¶¶ 10-12.)

"inevitable" by stating, "[w]e intend to commence legal action against you ... which *could* result in a judgment against you." Applying the unsophisticated consumer standard, the Ninth Circuit disagreed and found this statement did not violate the FDCPA. *Id*. The court distinguished letters stating, "after judgment is obtained" or that a lawsuit "will result in a judgment against you," and held "the conditional language in this instance is appropriate, accurate, and not misleading." *Id*. at 1027-28. Conversely, in *Dutton v. Wolhar*, 809 F. Supp. 1130, 1141 (D. Del. 1992), the court found that a letter implied a "judgment would inevitably be obtained" by using the phrase "once a judgment is obtained" but would not have if it instead used the phrase "'if judgment is obtained'"—i.e., the exact phrase used in the January Letter. Hence, the January Letter did nothing more than make an accurate statement about the *possible* outcome of litigation due to Plaintiff's admitted failure to pay the Account: Cavalry will file a lawsuit *asking* the court to enter a judgment, Plaintiff can present any defenses she may have to ward off that judgment but, "*if* a judgment is entered," Cavalry will take action to recover the amount owed. *See Zemeckis*, 679 F.3d at 636-37 (finding a letter did not violate the FDCPA because it "warns only that [the creditor] had the right to pursue legal action ... the letter alerted [plaintiff] only to the possible repercussions she faced for failing to pay").

Finally, there is no authority for Plaintiff's suggestion that the FDCPA requires debt collectors to advise consumers concerning the "judicial system" or their "rights and options ... to avoid a judgment." (Compl. ¶¶ 19, 35.) Indeed, the Seventh Circuit has fashioned a "safe harbor" for collection letters threatening litigation that does not contain *any* references to a consumer's "rights and options" in a lawsuit or a tutorial on the "judicial

7

system": "If you want to resolve this matter without a lawsuit, you must [pay the creditor or contact them to arrange payment]. If you do neither of these things, I will be entitled to file a lawsuit against you, for the collection of this debt." *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997).

In fact, Plaintiff's suggestion that the FDCPA obligated Cavalry to advise her of various "rights and options" during a lawsuit "to avoid a judgment" is so absurd that it would require Cavalry to engage in the unlicensed practice of law. *See* 705 ILCS 220/1 ("It shall be unlawful for a corporation to practice law"); *People ex rel. Illinois State Bar Ass'n v. Schafer*, 404 Ill. 45, 50, 87 N.E.2d 773, 776 (Ill. 1949) ("The practice of law involves not only appearance in court … it includes the giving of advice or the rendering of any services requiring the use of legal skill or knowledge"). Even if an attorney provided this advice in a collection letter, it would likely violate the professional ethics rules. *See* Texas Comm. on Prof'l Ethics, Op. 380 (1975), *available at* https://www.legalethicstexas.com/Ethics-Resources/Opinions/Opinion-380 (finding a collection letter detailing the litigation process is unethical and "the letter should not undertake to advise him as to the law or his status as a litigant"). Thus, Plaintiff's claims under Section 1692e are unsupported by fact or law and should be dismissed with prejudice.

### 2. Plaintiff's Section 1692f claim fails as a matter of law.

Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff alleges that the January Letter "unfairly" "oversimplif[ied] the legal process by portraying a possible lawsuit against Plaintiff to be in [Cavalry's] favor." (Compl. ¶ 37.) This is based on the same misrepresentations underpinning Plaintiff's Section 1692e claims and ignores that the January Letter states she

"will have the opportunity to defend [herself] after the lawsuit is filed" and referred to a judgment against her as a *possible* outcome of litigation, not an inevitability. (*Id*. at Ex. B); *Bogie*, 705 F.3d at 609 (exhibits contradicting plaintiff's allegations control for purposes of a motion to dismiss). Hence, Plaintiff's Section 1692f claim fails for the same reasons as her Section 1692e claims. (*Supra* Part III.A.1.ii.)

Additionally, Section 1692f is "intended to be a catchall provision that broadly prohibits unfair and unconscionable conduct, where the conduct is similar to that prohibited by the FDCPA but *not covered* by any other section therein." *Ali v. Portfolio Recovery Assocs., LLC*, No. 15-cv-06178, 2018 WL 4760284, at *10 (N.D. Ill. Sept. 30, 2018) (emphasis added). Hence, a "Plaintiff who uses the same factual allegations underlying another § 1692 claim for his § 1692f claim … fails to state an independent basis on which relief can be granted" and "the § 1692f claim must be dismissed." *Hayes v. Receivables Performance Mgmt., LLC*, No. 17-cv-1239, 2018 WL 4616309, at *6 (N.D. Ill. Sept. 26, 2018); *Heffron v. Green Tree Servicing, LLC*, No. 15-cv-0996, 2016 WL 47915, at *5 (N.D. Ill. Jan. 5, 2016) (finding a Section 1692f claim was "predicated on the same factual allegations as [plaintiff's] section 1692e claim" and therefore "fail[ed] to state an independent basis on which relief can be granted"). Since Plaintiff's Section 1692f claim is based on the same allegations as her Section 1692e claims, it fails as a matter of law and should be dismissed with prejudice.

### B. Count II Fails to State an Actionable FDCPA Claim Based on Receiving Two Validation Notices *Required* Under Section 1692g.

Section 1692g requires that debt collectors send consumers a notice within five days of an initial communication stating that they may dispute the validity of the debt within 30 days of receiving the notice. 15 U.S.C. § 1692g(a). Plaintiff admits that she

received a letter from CPS containing the required notice. (Compl. ¶¶ 13-15, Ex. A). Plaintiff did not dispute the validity of the Account or make any payments and, after several months, Cavalry placed the Account with a law firm. (Compl. ¶¶ 13-15, 20.) The law firm then sent Plaintiff a letter that also contained the required notice—thus providing her with a fresh opportunity to dispute the debt. (*Id*. at ¶¶ 22-23, 41, Ex. C.) According to Plaintiff, receiving a validation notice from CPS and then a second one—months later—from its attorneys "confused Plaintiff as to her rights" and was "unfair" in violation of FDCPA Sections 1692e, 1692f, and 1692g. (*Id*. at ¶¶ 43-47.) Plaintiff's claim *directly* conflicts with the actual law.

Courts in the Seventh Circuit and elsewhere have repeatedly held that each successive debt collector handling an account—including attorneys acting as agents of debt collector clients—*must* send their own validation notice pursuant to Section 1692g, even if the consumer already received a notice from the previous collector. *Gritters v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-916, 2018 WL 1784134, at *6 (N.D. Ill. Apr. 13, 2018) (agreeing "with the trend of courts in this District that § 1692g applies to each successive debt collectors and not only to the first in line" and entering judgment against a law firm for failing to send a validation notice); *Simpson v. Safeguard Props., LLC*, No. 1:13-cv-02453, 2017 WL 4310674, at *9 (N.D. Ill. Sept. 28, 2017) (reviewing "the statute, legislative history, and case law" and finding "§ 1692g requires a fresh notice from each successive debt collector"); *Sanchez v. Jackson*, No. 16-cv-6144, 2016 WL 6833974, at *4-7 (N.D. Ill. Nov. 21, 2016) ("an attorney debt collector acting as an agent on behalf of another debt collector must provide his own debt notice in addition to, or in lieu of, that of his client"); *see also Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1072-81 (9th Cir. 2016) (reversing judgment in favor of a law firm and holding "the FDCPA unambiguously

requires any debt collector—first or subsequent—to send a § 1692g(a) validation notice"). Hence, the law firm was required to send *its own* validation notice in addition to CPS's earlier notice.[3]

Plaintiff's convoluted allegations also seem to suggest that Cavalry and the law firm "have organized a debt collection system" and, thus, both validation notices "really" came from a single entity (presumably CPS) not successive debt collectors. (Compl. ¶ 41.) If this is Plaintiff's claim, it too is meritless as courts in the Seventh Circuit have uniformly held—for decades—that a debt collector does not violate the FDCPA by sending two validation notices. Indeed, in *DiRosa v. N. Shore Agency, Inc.*, 56 F. Supp. 2d 1039, 1039-40 (N.D. Ill. 1999), this Court dismissed Plaintiff's exact claim because "nothing in § 1692g suggests that a debt collector who has initially complied with that provision somehow becomes a violator if it includes similar validation notices in subsequent communications" and sending two notices is not a "false, deceptive, or misleading representation or means in connection with the collection of any debt." *see also*, *Paige v. Waukesha Health Sys., Inc.*, No. 2:12-cv-601, 2013 WL 3560944, at *8-9 (E.D. Wis. July 11, 2013) (dismissing FDCPA claims because "a second validation notice … neither confuses the consumer, discourages the consumer from exercising his statutory right to dispute the validity of the debt within the thirty-day period, nor constitutes a false or misleading representation in connection with the collection of the debt"); *Young v. G.L.A. Collection Co.*, No. 1:11-cv-489-WTL-MJD, 2011 WL 6016650, at *1 (S.D. Ind. Dec. 1, 2011) ("receipt of the second notice, proscribing a second 30–day period for validation, does not in any way hamper the unsophisticated

---

[3] Plaintiff is really asking the Court to create a "Catch-22": either the law firm sends a validation notice and violates the FDCPA or fails to send a notice and violates the FDCPA. *See* JOSEPH HELLER, CATCH-22 (1961). Obviously, that would be absurd.

debtor's exercise of her right to request validation of the debt" and "as a matter of law [plaintiff] cannot allege actionable confusion"). Even courts applying the least sophisticated consumer standard have held that sending consumers two Section 1692g notices does not violate the FDCPA. *See Greig v. Backer Aboud Poliakoff & Foelster, LLP*, No. 9:16-cv-81316, 2017 WL 57026, at *4 (S.D. Fla. Jan. 5, 2017) (dismissing claim with prejudice because "successive correspondence providing additional time for a consumer to dispute the validity of a debt does not violate the FDCPA").

In fact, Plaintiff's counsel recently advanced this theory in a Texas case and it was flatly rejected. *Ortiz v. Enhanced Recovery Co., LLC*, No. 3:18-cv-1347, 2019 WL 2410081, at *1 (N.D. Tex. June 6, 2019). In *Ortiz*, the plaintiff claimed that "by sending two letters—each of which contained an identical 30-day validation notice—[defendant] made a false, deceptive, or misleading representation" due to the "conflicting information evident in both letters." *Id*. at *1. But the court found that "the majority—and current trend—of courts confronted with the issue of sequential letters agree that a debt collector does not violate the FDCPA by sending two debt collection letters with 30-day validation notices more than 30 days apart." *Id*. at *3 (collecting cases). Hence, the court held that the second notice "neither 'vitiated the validity of the original notice' nor constituted conduct by a debt collector that could lead an unsophisticated consumer to act to her detriment." *Id*. at *5. And the reason for this is straightforward: "if the second letter *did* re-start the period of time the consumer had to request debt verification, then it only enlarged the consumer's rights" and if it "*did not* re-start the period of time available to the consumer, then the consumer is in the same position she was before the second letter was sent." *Id*.

12

Thus, even if there is a legal or factual basis for Plaintiff's apparent suggestion that the validation notices from CPS and the law firm are "really" from the same entity and not successive debt collectors, Plaintiff has still failed to allege an actionable FDCPA claim.

IV. **CONCLUSION**

This lawsuit epitomizes the Seventh Circuit's observation that every letter "is susceptible of an ingenious misreading" but the FDCPA only protects the unsophisticated consumer, "not the irrational one." *White*, 200 F.3d at 1020. Here, there is no basis in fact, law, or logic for Plaintiff's allegation that the January Letter "misleadingly" suggested a lawsuit had been filed at the time it was sent. That letter states the exact opposite *four times* and even Plaintiff concedes it merely referenced a "potential" or "possible" lawsuit. Equally irrational is Plaintiff's allegation that the January Letter "obfuscated" her "rights and options" to avoid a judgment and portrayed "a possible lawsuit against Plaintiff as one-sided in favor of Defendants … because it fails to account for Plaintiff's options to dispute Defendants' allegations." The January Letter explicitly states that she "will have the opportunity to defend [herself] after the lawsuit is filed." Finally, Plaintiff's claim that she received a validation notice required by Section 1692g from CPS and then a second, months later, from its attorneys simply *proves* that Cavalry and its attorneys *complied* with the FDCPA. Thus, Plaintiff's allegations are premised on nothing more than a bizarre misreading of the letters and a misapprehension of the law. Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

CAVALRY SPV I, LLC and
CAVALRY PORTFOLIO SERVICES, LLC,

By: /s/ James J. Morrissey

Anna-Katrina S. Christakis
James J. Morrissey
Pilgrim Christakis LLP
321 N. Clark Street, 26th Floor
Chicago, Illinois 60654
Ph: (312) 280-0441
Fax: (312) 939-0983
kchristakis@pilgrimchristakis.com
jmorrissey@pilgrimchristakis.com

## CERTIFICATE OF SERVICE

James J. Morrissey, an attorney, certifies that on July 26, 2019, he electronically filed the foregoing **Defendants' Motion to Dismiss Plaintiff's Complaint** with the Clerk of the Court using the CM/ECF system, which will send a notification to all attorneys of record.

/s/ James J. Morrissey